Good morning. May it please the court. My name is Stephen Sloan, representing the appellant Susan Allen. This appeal arises from the district court's erroneous affirmation of an ALJ's decision denying disability benefits, which was not supported by substantial evidence and was marred by legal error. I would like to reserve two minutes of my time for rebuttal. You may just keep an eye on your clock. Today I will address two key issues. First, the ALJ improperly rejected the well-supported medical opinion of Allen's longtime pain management specialist, Dr. Lisa Sparks. Second, the ALJ failed to apply the proper two-step analysis in evaluating Allen's symptoms, which is a particularly critical assessment in the context of her primary impairment, fibromyalgia. Dr. Sparks has treated Allen regularly since approximately 2005 or 2006, with consistent visits throughout the relevant period. This is not a case of a one-time evaluation or a consultative opinion. It's an established, continuous treatment relationship by a specialist in pain management, which is an appropriate specialty in the context of Allen's chronic pain. Under the regulations, Dr. Sparks' opinions are supported by multiple critical factors, including her being an examining treating pain management specialist who has a longitudinal view of Allen's symptoms. The ALJ made no mention of these critical factors. This court held in Treviso v. Berryhill that this error alone necessitated remand. Yet in this case, the error is particularly egregious in light of the fact that SSR 12-2P, which is the agency's guidance on fibromyalgia, states that longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in these instances. So in essence, what do you understand to be the ALJ's reasons for rejecting Dr. Sparks' opinions? There seem to be a couple. The first is that the ALJ misconstrued the consistency factor by equating partial pain relief with a functional capacity to perform sustained competitive employment. But fibromyalgia is characterized by fluctuations in symptoms. This court's decision in Rebels v. Berryhill makes clear that one of fibromyalgia's hallmarks is the inconsistency of symptoms, with flare-ups and improvements that coexist throughout the course of the illness. In this case, the ALJ asserted that improvement with pain medication contradicted Dr. Sparks' despite the fact that Dr. Sparks specifically acknowledged partial relief from medication, but nevertheless opined to persistent severe limitations. This was consistent with ongoing reports in the record of chronic pain that was anywhere from around 4 to 6 out of 10 on the pain scale, but would flare up to 8 to 9 out of 10. And really the only inconsistency the ALJ is identifying here is with their own apparent assumption that improvement is synonymous with a lack of disabling limitations. But almost every case involves some level of improvement, and disability doesn't require that an individual's symptoms be completely resistant to treatment. So in other words, with respect to the pain medication issue, the ALJ essentially determined that the pain medication reduced the level of the consistency of the pain, reduced that consistency so that she was able to work? Does that mean that's what the ALJ did? It's not really clear, Your Honor. The ALJ doesn't provide much articulation of this factor at all. They just make sort of a vague statement regarding improvement with medication, and they make citations to the record. But many of those citations actually illustrate the exact context for this and as to why it's not inconsistent with Dr. Sparks' opinion. So the pain medication is one reason. Were there any others? It was also that Dr. Sparks was reliant upon subjective reports, but subjective reports are, you know, they're central to diagnosis of fibromyalgia. And essentially by dismissing on this basis, the ALJ has effectively penalized Allen for the very nature of her illness. The Ninth Circuit has recognized that fibromyalgia is primarily diagnosed through subjective reports and clinical observations. And Dr. Sparks, as an ongoing longitudinally treating pain management specialist, is the individual who's in the unique position to make that assessment. Now, while the commissioner has argued that objective signs such as atrophy still speak to the severity of fibromyalgia symptoms, this is contrary to longstanding precedent. It's contrary to SSR 12-2P, which the ALJ never even mentions despite that SSR being central to an assessment of fibromyalgia. Even the commissioner's own citations to science articles and their response don't support a theory. There's notes that there's a substantial amount of contradicting views in the field of medicine and further research is needed. Additionally, while the commissioner cited Menil versus Atfill for the proposition that atrophy is still a relevant condition, in that case, the claimant had testified that they had experienced pain that required them to lie in a fetal position all day. In such extreme instances where somebody's essentially bedridden or not using their muscles at all, certainly maybe you would expect to see atrophy. But in this case, Fallon was still attempting to try to be as active as possible. She was going to physical and occupational therapy. She was trying to swim. She was trying to contribute to her household in some ways. And so she wasn't bedridden, nor do the regulations require that she be so in order to establish this ability. Going back to the, if I could ask you to go back for a moment to the pain medication question. I mean, the ALJ's statement I grant is a little bit vague, but do you think it can be read as saying that there are a number of reports of the medication having reduced pain levels, not to zero, but reduce them. And that as so reduced, those reports are inconsistent with her report and Dr. Sparks's report of pain that's so severe that it prevents her from doing things. Because it does seem like there were activities that she was able to engage in because the pain was controlled to some degree, right? I would agree with that. I would say, though, that in this sense, the actual reduction of pain just isn't consistent with Dr. Sparks's opinion, though. I would agree that the record, the ALJ does seem to be relying upon it, this reduction of pain that allows her to do some activities of daily living, for instance. But, you know, those citations specifically provide context for that. Like, there is an example of the judge citing an instance where Allen had gone to the grocery store and then come home and then she had cooked a small meal, but then she was too tired, she was in too much pain to be able to do dishes. And something like this, when you compare it with the requirements of light work, which requires somebody being on their feet for the majority of an eight-hour workday, you know, it doesn't really build a logical bridge there. And additionally, when we're talking about Dr. Lisa Sparks's opinion, you know, I don't think the fact that it flares up to those eight to nine out of ten levels, particularly with increased activity, is inconsistent with the record or with my client's, you know, testimony. Now... Well, counsel, I checked the... My understanding is the nature of the pain medication that she would take was pretty strong stuff. It wasn't just take two aspirin. This was morphine, sulfate, and oxycodone and other things like that that are kind of dangerous. And that's correct, Your Honor. And she had already failed many fibromyalgia, more specific, you know, fibromyalgia medications such as Lyrica and Cymbalta and Civella and others. And so at this point, she's in this period of time where she's dealing with chronic pain management, and Dr. Lisa Sparks is the appropriate one for that. And there's, contrary to the commissioner's implication and their response, there's absolutely no indication that she's abusing those. To the contrary, she's tried to get off opioid medications in this record and has been unable to do so. And I would like to reserve the remainder of my time.  Mrs. Farmer? Good morning, Your Honor. It's Elizabeth Fair for Leland Dudek, the Acting Commissioner of Social Security. This is a case where this claimant has said multiple times on multiple occasions that she's had this level of pain for 25 years, 27 years, 24 years, and she worked during most of that time. She stopped working because she was laid off in October 2014. She says at various points in the record that she also had sort of lessened the amount of time she was at work, but that's not supported by her actual earnings records. And she did admit twice during the hearings at page 84 and page 136 that she was laid off. That was the primary reason for stopping work. So given that fact and given the very steadiness of this record overall, the ALJ finding that the claimant was capable of performing a limited range of light work as opposed to the skilled work that she had been doing in the past is supported by this longitudinal record. And I'd like to just direct your attention to page 1592 where Nurse Gallo, Sandra Gallo, who was also a pain specialist, and this is in July of 2019, claimant's stable on her current medication regimen, medications provide adequate relief, allowing her to maintain her functional status and quality of life. That's only a few months before December 2019, which is claimant's date last insured. So the record is full of instances like that where the treating sources and claimant went to three different pain clinics. She was treated by more pain specialists than just Dr. Sparks. And Dr. Sparks is the outlier here who essentially kind of parroted what claimant was saying in terms of how limited she was. But let's look at how limited claimant says she is. She testifies that her trapezius muscles feel like cement. She testifies that if she sits for any period of time, she gets pain. If she does lighthouse work in her kitchen, she's incapacitated for several days. She says she can't walk more than a block. She says that she can't stand for more than 30 minutes at a time, that she can't concentrate. And the records don't support that. The ALJ's analysis here is very detailed. She didn't use the word longitudinal, but on page, I think it's on page 32, she describes the record as a whole. And you just can't say that this record as a whole doesn't show that this claimant worked with the same symptoms that she has now. Or that she's claiming are disabling. And the ALJ gave valid reasons for discounting Dr. Sparks' outlying opinion, that it wasn't supported by her. Well, she didn't just discount it. She just didn't consider it. I mean, in the end, she said, I'm not giving it any weight whatsoever. Correct. But it is true. Sometimes they say we're going to give it partial weight. I never understood quite what that means. Or sometimes they're going to give it some weight. Maybe you can figure out where they're giving weight. But here the ALJ said no weight, you know. Those evaluations are not going to be considered. Well, look at it in the context of the other doctors who did assess limitations. We have the two state agency physicians. And one of them actually says that, and this is the recon, January 2016, Dr. Schwartz says that her subjective allegations aren't supported by the objective findings, by her adaptive functioning, or by the longitudinal record. And that's a doctor who didn't examine her, yes. But Dr. Gordon examined her twice and was well aware that she has fibromyalgia, well aware of the tender points and whatnot, and found first a range of light work and then a range of medium work. And then you have these other doctors who treated claimant for pain, Dr. Gallo, or Nurse Gallo, Dr. Grove, who did the injections, and his records are 13F. And all of these people have made findings that are very different from Dr. Sparks. So the ALJ was reasonable in giving it no weight, given what else is in the record. I understood the record to show that Dr. Sparks treated her the most. Is that correct? You know, that's probably correct, yes. But there are other doctors. There was a Dr. Luberto who treated her, like, almost as long. Let me ask you this. Do you think that our opinion in REBLS has any application here? I think it's distinguishable.  And a couple of things. First of all, REBLS does not have the situation we have here with someone who admitted over and over again, I've had these limitations since 1990 at the earliest. Well, let me just add one little other circumstance there. Do you agree that the record shows that she suffers from fibromyalgia? Yes. Okay. So, okay, go on. Yes. So what 12.2p requires an ALJ to do is consider the longitudinal record. It says that in there, and you have an ALJ doing this. So REBLS doesn't have a person whose medical conditions are actually steady. You know, REBLS had an exacerbation in her condition that caused her to stop working as a phlebotomist. Then in REBLS, you also have three doctors, instead of one here, who assessed limitations that the ALJ rejected. So you've got, those are two major differences between this case and REBLS. So what you have here, and this is, fibromyalgia doesn't mean that objective evidence is just completely irrelevant. So, again, you have here somebody who's making these very limited allegations like, you know, she spends most of her day with an ice pack on. She can't stand or walk or sit even for extended periods of time, yet she has no muscle wasting. That's everywhere in this record. She has no atrophy. She's able to move about, you know, in a normal way throughout her office examinations. Not always. Sometimes she's limited. Sometimes she has, you know, range of motion limitations. But overall, this record shows someone who is functional. Yes, she has pain, but you don't need to be pain-free in order to work. And this record proves that. Do you agree that the nature of the medication that she was to take was potentially addictive? Yes. And actually, Dr. ‑‑ I think it's Dr. Lomberto. He actually diagnosed as opioid dependence at a certain point. But I think according to ‑‑ we have an SSR that I'm blanking on the number of it right now, but it talks about if you're taking opioid medications as prescribed, and I believe she was. I don't think any doctor said she wasn't. She just became addicted to them. But in 2017, July ‑‑ I'm sorry, July 2018 at the hearing, claimant testified that she's been able to get off morphine. So she doesn't take them all the time. But essentially, wasn't the decision here that she can work that if she takes this medication and therefore she's not disabled? I think the record shows that she worked. Her medications have varied all over the place. And she did work while she was taking these significant medications. And that was skilled work. She was running an office. So she was capable of doing it with those medications. So we're going to say that she's supposed to continue taking those medications in order to get ‑‑ I think the record shows, as I said, she's not taking morphine anymore. There are a few instances where she's not taking ‑‑ she says she's not taking any medications to a couple of treating sources. And so I don't ‑‑ I don't think there's an issue with her medication in terms of it either preventing her from working with the limitations the ALJ assessed. No, but she's supposed to work taking it. I'm just wondering, do we have any cases that deal with a finding like this that she doesn't get benefits because she can take addictive medications and work? I don't think so. I know I had a case when that SSR came out where it was an issue whether the claimant was maladaptively taking the medications. It's unpublished. I can't remember exactly what the name of it is. But did she ‑‑ did she present to the ALJ any evidence that in assessing what my level of pain is, you have to take account of the fact that I won't be able to take these medications in the future because they're addictive? She didn't present anything like that. No, there's nothing like that in there. And so she ‑‑ what my understanding of this record is, is she actually did significantly skilled work while taking more medications than she's taking now or, you know, at the end of her insured period. And the ALJ found that she could only do unskilled work. And at page 34 in the record, the ALJ does explain that some of the limitations are because she has pain and she has to take medications for it. So overall, this ALJ, you can confidently say that this ALJ had a longitudinal record that allowed her to assess not only claimant's fibromyalgia, but she does have other impairments that the ALJ addressed that are more amenable to objective markers. So it's detailed, it's supported by substantial evidence, and it's consistent with this court's case law. So we ask that you affirm. Thank you, Ms. Feurer. Rebuttal? Mr. Sloan, you're muted. My apology. Thank you, Your Honors. So almost the entirety of what opposing counsel is talking about here is not mentioned by the ALJ. Almost all of these are substituted rationales with explanations that were never apparent in the ALJ's discussion. Moreover, talking about most recently that oxycodone, right at the date last insured, she was taking the max dose of her oxycodone. There's a citation to the record of 1573. She was being refilled at that time. That's right at her date last insured. So I'm not really sure what opposing counsel is talking about in terms of coming off the not being on narcotic medication at the time of the date last insured. That's just not in the record. Moreover, while she was working for 25 years and she's had chronic pain, she testifies that it's worse and that her last job, it's notable, was a sedentary job. This was an office management job. And she talked about by the end of it she was working somewhere between 10 a.m. to 2 p.m. before she was too tired to quit. And ultimately, this is something where the symptoms got worse and worse and gradually got to the point where she was no longer able to work. And so in this instance, for these reasons, we respectfully request that this court reverse the decision of the district court and remand. Thank you, Your Honors. Thank you. We thank both counsel for their arguments, and the case is submitted.
judges: SCHROEDER, PAEZ, MILLER